IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| ROBERT BERG, Individually and On Behalf of All Others Similarly Situated,<br>4481 N. 55th Street, Milwaukee, WI 53218<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>TERRAFORM GLOBAL, INC.,<br>7550 Wisconsin Avenue, 9th Floor, Bethesda, MD 20814<br><br>PETER BLACKMORE,<br>7550 Wisconsin Avenue, 9th Floor, Bethesda, MD 20814<br><br>FRED BOYLE,<br>7550 Wisconsin Avenue, 9th Floor, Bethesda, MD 20814<br><br>CHRISTOPHER COMPTON,<br>7550 Wisconsin Avenue, 9th Floor, Bethesda, MD 20814<br><br>HANIF DAHYA,<br>7550 Wisconsin Avenue, 9th Floor, Bethesda, MD 20814<br><br>MARK LERDAL,<br>7550 Wisconsin Avenue, 9th Floor, Bethesda, MD 20814<br><br>DAVID J. MACK,<br>7550 Wisconsin Avenue, 9th Floor, Bethesda, MD 20814<br><br>ALAN B. MILLER,<br>7550 Wisconsin Avenue, 9th Floor, Bethesda, MD 20814<br><br>JACK STARK,<br>7550 Wisconsin Avenue, 9th Floor, Bethesda, MD 20814<br><br>DAVID RINGHOFER,<br>7550 Wisconsin Avenue, 9th Floor, Bethesda, MD 20814<br><br>GREGORY SCALLEN,<br>7550 Wisconsin Avenue, 9th Floor, Bethesda, MD 20814<br><br>BROOKFIELD ASSET MANAGEMENT INC.,<br>181 Bay Street, Suite 300, Toronto, Ontario M5J 2T3 | Case No. _____<br><br>JURY TRIAL DEMANDED<br><br><u>CLASS ACTION</u> |

| | |
|---|---|
| ORION US HOLDINGS 1 L.P., <br> 181 Bay Street, Suite 300, Toronto, Ontario M5J 2T3 <br><br> BRE GLBL HOLDINGS INC., <br> 181 Bay Street, Suite 300, Toronto, Ontario M5J 2T3 <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

### NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on March 7, 2017 (the "Proposed Transaction"), pursuant to which TerraForm Global, Inc. ("TerraForm" or the "Company") will be acquired by Orion US Holdings 1 L.P. ("Parent") and its wholly owned subsidiary, BRE GLBL Holdings Inc. ("Merger Sub"), which were formed by affiliates of Brookfield Asset Management Inc. ("BAM," and together with Parent and Merger Sub, "Brookfield").

2. On March 6, 2017, TerraForm's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with Orion. Pursuant to the terms of the Merger Agreement, each share of TerraForm's Class A common stock will be converted into the right to receive $5.10 in cash. Further, as contemplated by the Merger Agreement and pursuant to a settlement agreement entered into between TerraForm Global and SunEdison, Inc. ("SunEdison"), immediately prior to the merger, SunEdison will exchange all of its Class B units of the Company's subsidiary, TerraForm Global, LLC, into 25% of the Company's outstanding Class A shares on a fully

2

diluted basis.

3. On October 10, 2017, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of TerraForm common stock.

9. Defendant TerraForm is a Delaware corporation and maintains its principal executive offices at 7550 Wisconsin Avenue, 9th Floor, Bethesda, Maryland 20814. TerraForm's

common stock is traded on the Nasdaq GS under the ticker symbol "GLBL."

10. Defendant Peter Blackmore ("Blackmore") is a director, Chairman of the Board, and Interim Chief Executive Officer ("CEO") of TerraForm.

11. Defendant Fred Boyle ("Boyle") is a director of TerraForm.

12. Defendant Christopher Compton ("Compton") is a director of TerraForm.

13. Defendant Hanif Dahya ("Dahya") is a director of TerraForm.

14. Defendant Mark Lerdal ("Lerdal") is a director of TerraForm.

15. Defendant David J. Mack ("Mack") is a director of TerraForm.

16. Defendant Alan B. Miller ("Miller") is a director of TerraForm.

17. Defendant Jack Stark ("Stark") is a director of TerraForm.

18. Defendant David Ringhofer ("Ringhofer") is a director of TerraForm.

19. Defendant Gregory Scallen ("Scallen") is a director of TerraForm.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

21. Defendants BAM is organized under the laws of Canada and it beneficially owns Parent and Merger Sub.

22. Defendant Parent is a Delaware limited partnership, an affiliate of BAM, and a party to the Merger Agreement.

23. Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

24. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of TerraForm (the "Class"). Excluded from the Class are defendants herein

and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

25.  This action is properly maintainable as a class action.

26.  The Class is so numerous that joinder of all members is impracticable. As of July 31, 2017, there were 112,970,826 shares of Class A TerraForm common stock outstanding and 61,343,054 shares of Class B TerraForm common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

27.  Questions of law and fact are common to the Class, including, among others, (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

28.  Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

29.  The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

30.  Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on

behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

*Background of the Company*

31. TerraForm and its subsidiaries is a globally diversified renewable energy company that owns long-term contracted solar and wind power plants. The Company's business objective is to own and operate a portfolio of renewable energy power plants and to pay cash dividends to its stockholders. The Company has acquired a portfolio of long-term contracted clean power plants from parties that have proven technologies, creditworthy counterparties, low operating risks, and stable cash flows. TerraForm's portfolio consists of solar and wind power plants located in Brazil, China, India, Malaysia, South Africa, Thailand and Uruguay with an aggregate net capacity of 919.0 MW as of May 31, 2017.

32. The Company was formed as a Delaware corporation under the name SunEdison Emerging Markets Growth and Yield, Inc. on September 12, 2014 as a wholly owned indirect subsidiary of SunEdison. The name of the Company was subsequently changed to TerraForm Global, Inc. on April 1, 2015. Following its initial public offering on August 5, 2015, TerraForm became a holding company and its sole asset is a 64.8% equity interest in TerraForm Global, LLC ("Global LLC") as of May 31, 2017. TerraForm is the managing member of Global LLC, and operates, controls, and consolidates the business affairs of Global LLC.

33. SunEdison beneficially owns all of TerraForm's outstanding Class B common stock, each share of which entitles SunEdison to 100 votes on all matters presented to the Company's stockholders. As a result of its ownership of TerraForm's Class B common stock, SunEdison possesses approximately 98.2% of the combined voting power of TerraForm's stockholders even though SunEdison only owns approximately 37.0% of the Company's total

Class A and B shares outstanding.

34.  On April 21, 2016, SunEdison and certain of its domestic and international subsidiaries voluntarily filed for protection under Chapter 11 of the U.S. Bankruptcy Code (the "SunEdison Bankruptcy"). In anticipation of and in response to SunEdison's financial and operating difficulties, which culminated in the SunEdison Bankruptcy, at the direction of the Board, the Company undertook a number of strategic initiatives to attempt to mitigate the adverse impacts of the SunEdison Bankruptcy on the Company.

35.  Rather than continue the Company as a standalone business, however, the Board determined to sell the Company in the Proposed Transaction to SunEdison's preferred bidder, Brookfield.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

36.  Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction. As set forth below, the Proxy Statement omits material information with respect to the Proposed Transaction.

37.  The Proxy Statement omits material information regarding the Company's financial projections and the valuation analyses performed by the Company's financial advisors in connection with the Proposed Transaction, Centerview Partners LLC ("Centerview") and Greentech Capital Advisors Securities, LLC ("Greentech").

38.  Although the Proxy Statement discloses certain of the Company's financial projections, it fails to disclose certain of the projections that Centerview and Greentech actually used in its valuation analyses to support its opinion that the merger consideration is fair to the Company's stockholders. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and

allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

39. According to the Proxy Statement, in performing its Discounted Cash Flow Analysis, Centerview used the Company's forecasted fully-taxed unlevered free cash flows for the Company for the years 2017 through 2026, estimated forward 2026 EBITDA, forecasted net operating loss carryforwards, and forecasted debt repayment costs. The defendants, however, failed to disclose any of these projections in the Proxy Statement.

40. Centerview also performed a discounted cash flow analysis and a dividend discount analysis of the Company assuming a run-off of the existing asset portfolio, with no development or acquisition growth, which used the Company's forecasted fully-taxed unlevered free cash flows for the Company for the years 2017 through 2045 and the estimated dividend streams from the Company for the years 2017 through 2045, respectively. The Proxy Statement, however, fails to disclose any of the Company's "run-off case" projections.

41. In performing its analyses, Greentech evaluated, at the request of the Company's board of directors, (1) a scenario in which the Company remains a publicly traded company that is expected to produce a predictable cash flow but with no further asset growth (the "run-off yieldco scenario"), and (2) a scenario in which the Company becomes a stand-alone independent power producer ("IPP") and acquires additional projects over the next 10 years (the "stand-alone IPP scenario"), in each case, based on the projections provided by the Company's management. Like Centerview's analyses, Greentech's discounted cash flow and dividend discount analyses of the Company in each of the run-off yieldco scenario and stand-alone IPP scenario used the Company's projections of free cash flows to the firm and dividend per share of Class A common,

respectively, but the Proxy Statement fails to disclose any of the Company's projections used by Greentech in its analyses.

42.     The Proxy Statement also fails to disclose material information relating to Centerview's and Greentech's valuation analyses, which the Board reviewed and relied upon in approving the Proposed Transaction. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

43.     With respect to Centerview's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the forecasted fully-taxed unlevered free cash flows for the Company for the years 2017 through 2026; (ii) Centerview's basis for selecting enterprise value to EBITDA exit multiples of 6.5x to 7.5x;" (iii) the Company's estimated forward EBITDA as of December 31, 2026; (iv) the forecasted net operating loss carryforwards for the Company; (v) the forecasted debt repayment costs; (vi) the inputs and assumptions underlying the discount rate range of 9.75% to 10.25% selected by Centerview in its analysis; and (vii) the perpetuity growth rate range implied by Centerview's analysis.

44.     With respect to Centerview's Selected Comparable Company Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by Centerview in its analysis.

45.     With respect to Centerview's run-off case Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the forecasted fully-taxed unlevered free cash flows for the Company for the years 2017 through 2045; (ii) the forecasted net operating loss carryforwards

for the Company; (iii) the forecasted debt repayment costs; and (iv) the inputs and assumptions underlying the discount rate range of 9.75% to 10.25% selected by Centerview in its analysis.

46. With respect to Centerview's run-off case Dividend Discount Analysis, the Proxy Statement fails to disclose: (i) estimated dividend streams from the Company for the years 2017 through 2045; and (ii) the inputs and assumptions underlying the discount rate range of 15.00% to 16.00% selected by Centerview in its analysis.

47. With respect to Greentech's Run-Off YieldCo Scenario Comparable Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by Greentech in its analysis.

48. With respect to Greentech's Run-Off YieldCo Scenario Discounted Cash Flow Analyses, the Proxy Statement fails to disclose: (i) the run-off yieldco scenario projections for calendar years 2017 through 2044 as provided by the Company's management; (ii) the projected free cash flow to the firm in both the asset useful life case and the contracted life case; and (iii) the inputs and assumptions underlying the discount rate range of 9.4% to 10.3% selected by Greentech in its analyses.

49. With respect to Greentech's Run-Off YieldCo Scenario Dividend Discount Model Analysis, the Proxy Statement fails to disclose: (i) the projected dividend per share of Class A common stock in both the asset useful life case and the contracted life case; and (ii) the inputs and assumptions underlying the discount rate range of 11.3% to 12.6% selected by Greentech in its analysis.

50. With respect to Greentech's Stand-Alone IPP Scenario Comparable Companies Analysis, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by Greentech in its analysis.

51.   With respect to Greentech's Stand-Alone IPP Scenario Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the stand-alone IPP scenario projections of the Company's free cash flow to the firm from calendar year 2017 through calendar year 2026; (ii) the Company's estimated calendar year 2026 EBITDA; (iii) the inputs and assumptions underlying the discount rate range of 8.4% to 9.5% selected by Greentech in its analysis; and (iv) the perpetuity growth rate range implied by Greentech's analysis.

52.   With respect to Greentech's Stand-Alone IPP Scenario Dividend Discount Model Analysis, the Proxy Statement fails to disclose: (i) estimated dividend per share in calendar year 2026 in the stand-alone IPP scenario; (ii) the inputs and assumptions underlying the discount rate range of 13.2% to 16.2% selected by Greentech in its analysis; and (iii) the terminal exit multiples range implied by Greentech's analysis.

53.   The Proxy Statement also fails to disclose whether Centerview or Greentech performed a precedent transactions analysis, and if so, the Proxy Statement must disclose a fair summary of that analysis. If neither Centerview nor Greentech performed such an analysis, the Proxy Statement must disclose the reason the financial advisors failed to do so.

54.   The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) "Opinions of the Company's Financial Advisors;" and (ii) "Certain Company Forecasts."

55.   The Proxy Statement omits material information relating to potential conflicts of interest of Centerview. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

56. Specifically, the Proxy Statement states that, "[i]n connection with Centerview's services as the financial advisor to the board of directors and the conflicts committee, the Company has agreed to pay Centerview an aggregate fee of $10.0 million, a portion of which was payable upon the rendering of Centerview's opinion and a significant portion of which is payable contingent upon consummation of the merger." The Proxy Statement must disclose the amount of compensation that is contingent upon consummation of the Proposed Transaction. This information is necessary to allow the Company's stockholders to assess for themselves whether Centerview was incentivized to ensure that the Proposed Transaction was consummated by issuing a favorable fairness opinion.

57. The omission of this material information renders the Proxy Statement false and misleading, including, inter alia, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Opinions of the Company's Financial Advisors."

58. The Proxy Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

59. The Proxy Statement states that, "[o]n August 4, 2017, following the signing of the merger agreement, the Company made annual director grants of Company RSUs . . . to each of Messrs. Blackmore, Boyle, Compton, Dahya, Lerdal, Mack, Miller and Stark." Further, in connection with the Proposed Transaction, the Company and Parent agreed to grant TerraForm's Senior Vice President, General Counsel, and Secretary, Yana Kravtsova, a retention award which provides for a cash payment in an amount equal to $300,000. The Proxy Statement, however, fails to disclose any information relating to the timing and nature of discussions regarding these RSU and retention payments, including who proposed the payments and who participated in such conversations.

60. The omission of this material information renders the Proxy Statement false and misleading, including, inter alia, the following sections of the Proxy Statement: (i) "Background of the Merger;" and (ii) "Interests of Certain Persons in the Merger."

61. The Proxy Statement omits material information regarding the background of the Proposed Transaction. The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction.

62. The Proxy Statement indicates that the Company entered into "more than 30" non-disclosure agreements ("NDAs") with parties that were potentially interested in a transaction with the Company. The Proxy Statement, however, fails to disclose the terms of those confidentiality agreements, including whether they contain a standstill and/or "don't ask, don't waive" provision that are or were preventing those counterparties from submitting superior offers to acquire the Company.

63. The omission of this material information renders the "Background of the Merger" section of the Proxy Statement false and misleading.

64. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and TerraForm

65. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

66. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. TerraForm is

liable as the issuer of these statements.

67. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within TerraForm, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

68. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

69. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

70. The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

71. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

72. Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants and Brookfield

73. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

74. The Individual Defendants and Brookfield acted as controlling persons of TerraForm within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of TerraForm and participation in and/or awareness of

TerraForm's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of TerraForm, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

75. Each of the Individual Defendants and Brookfield was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

76. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of TerraForm, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly in the making of the Proxy Statement.

77. Brookfield also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

78. By virtue of the foregoing, the Individual Defendants and Brookfield violated Section 20(a) of the 1934 Act.

79. As set forth above, the Individual Defendants and Brookfield had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934

Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

Dated: October 17, 2017

        **GOLDMAN & MINTON, P.C.**

        By: \_\_\_\_/S/_____
        Thomas J. Minton – No. 03370
        3600 Union Avenue, Suite 201
        Baltimore, Maryland 21211
        Ph (410) 783-7575
        Fax (410) 783-1711
        tminton@charmcitylegal.com

        *Attorneys for Plaintiff*

OF COUNSEL:

**RIGRODSKY & LONG, P.A.**
Brian D. Long
Gina M. Serra
2 Righter Parkway, Suite 120
Wilmington, DE 19803
(302) 295-5310

**RM LAW, P.C.**
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
(484) 324-6800

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: October 17, 2017

**GOLDMAN & MINTON, P.C.**

By: ____/S/_____
Thomas J. Minton – No. 03370
3600 Union Avenue, Suite 201
Baltimore, Maryland 21211
Ph (410) 783-7575
Fax (410) 783-1711
tminton@charmcitylegal.com

*Attorneys for Plaintiff*